This is a matter of Wal-Mart Associates, Inc. v. Industrial Commission, 4110683.  May it please the Court, Counsel, my name is Tim Stile, and I represent the employer, Wal-Mart. We are all aware an injured employee bears the burden to prove all elements of his or her work-on-claim. It is our contention that Ms. Terry Jones, the employee in this case, failed to prove causation, and as such, the Commission award of additional post-arbitration benefits was inappropriate and should be reversed. The facts of this case is brief and straightforward. Ms. Jones suffered an accident on September 19, 2003, when she fell off a four-to-five-foot ladder and landed on her left knee. She was diagnosed with a patellar tendon contusion. She underwent conservative treatment consisting of physical therapy, home exercise, and pain medicine. Her treatment concluded prior to arbitration on September 15, 2005. Now, at this last visit on September 15, 2005, prior to the original arbitration hearing, and this will be important as will be explained later, Dr. Shelbourne stated to Ms. Jones that she had a structurally normal knee and told Ms. Jones that there was nothing further she could do to cause damage to her knee. This case went to trial in front of an arbitrator on April 17, 2006, and the decision was not appealed and became final on June 24, 2006. Ms. Jones received 12.5% loss of use of a leg for her permanency award. Thereafter, Ms. Jones timely filed a 19-H request for hearing under the Workers' Compensation Act, requesting additional benefits involving a hold harmless on medical bills and additional permanency benefits due to her alleged increase in disability. It is this request for additional benefits that we are here today. The undisputed facts as presented to the Commission at the 19-H trial are as follows. There is a significant gap in treatment from September 15, 2005 to June 2, 2008. It is important to remember that prior to September 15, 2005, she was last seen on February 25, 2004. So we have over a four-year gap in treatment where there is only one visit between February 25, 2004 to June 2, 2008. It is also undisputed that after her arbitration hearing, she was never taken off of work, she was never given work restrictions, and she never had surgery. It is also undisputed... Counsel, is medical testimony and medical evidence required to support the claimant's position? I believe, based on the facts of this case, medical testimony is important. As expressed... It's important, I would agree with you there. Is it required? I believe that, based on the facts of this case, it is required. There is the University of Illinois case that was cited to you by Ms. Jones' attorney. However, the facts of that case are different. The ruling held in that University of Illinois case was that an injured employee's testimony itself is sufficient in order to find causation. However, that is also dependent based on the facts of the case. In that University of Illinois decision, she had continuous treatment after her accident for which the doctor had performed surgery. There is a question in that case concerning a pre-existing condition, and there was about approximately two years where she testified she was symptom-free prior to the work accident. The dispute on that case was concerning the pre-existing condition. But one of the things deemed important in that University of Illinois decision was that she had continuous treatment. That is very different than the facts presented to our case. But, John, again, continuous treatment, you've tacitly conceded, is not required in all cases. So what do you do in a case such as this? I mean, what rule do we announce where you have the testimony primarily of the claimant as to the progression and the problems with the injuries, and the commission finds the claimant to be credible? So do we say recovery cannot be had because there's no specific medical testimony? Well, then in that case, I say we look at the medical evidence. She testified concerning how her knee gave way. The medical evidence shows she had an x-ray where it was normal. She also has Dr. Shelborn who stated there was no structural damage to her knee. If there's no structural damage, as a layperson, I don't see how her knee could physically start giving way. She had an MRI, and I would ask that the commission decision be scrutinized in this case because they indicate that she had injections pre-arbitration. She admitted at the commission hearing she did not have any injections prior to the arbitration. You look at the records from Dr. Plattner's office where she told him she never had her x-ray. In fact, the facts show she had not just x-ray, she had an MRI prior to her arbitration hearing. After the arbitration hearing, was she required or did she undergo quarterly injections to her knee to manage her pain? Afterwards, yes, June 2, 2008. How does it sound with the argument that there was no medical treatment? I'm sorry, I'm confused. Well, she testified that her condition got progressively worse. Her knee was giving out, she was collapsing, she was required to take multiple pain medications, undergo quarterly knee injections. Isn't that true? She did go undergo injections, but let's take a look at Dr. Plattner's records. She informed him that prior to the arbitration she had injections. If you look at his records, it could be inferred from his statements that given that she said she had a benefit from these prior injections before arbitration that she never had, he decided that that would be an option that they could proceed with. So I think that there are questions concerning her credibility that the commission, at their discretion, they considered her to be credible. But the medical evidence does not support her testimony concerning her own perceived deficits. And that's why I think that we need to take a look at her statements are fine if you don't want to review the medical evidence. But you also have, I don't think her testimony is sufficient here, when the medical evidence contradicts it. And how is this specifically contradicted? By her MRIs that show that she had a structurally normal knee. She had the MRI where Dr. Plattner indicated it only showed a small contusion. Now this MRI that he's reviewing is in 2008. Unfortunately for us, that MRI was not introduced into evidence. And we believe that there's an inference that given that the MRI was not introduced into evidence, nor the fact that she disclosed to Dr. Plattner's office that she did in fact have these prior diagnostic studies, that an inference could be made that that information would not have been supportive of her case. It is also undisputed that she had a motor vehicle accident. Now if you review the commission decision. Is there a procedure for you to require an MRI from the clinic? Where the employer can require? No, there's not a remedy under the Workers' Compensation Act that we can require an individual, an injured employee to undergo treatment. In fact, I don't have the case law in front of me. But there's cases that have indicated that an employer cannot compel an employee to undergo treatment. So the best you could do would be a medical exam? Yes, under Section 12. And based on the facts in this case, a Section 12 exam had not performed, as there was no rebuttal opinions by Dr. Plattner concerning Dr. Shelbourne's statements, that there's no structural damage, and that there's no damage that she could do to cause further injury to her knee. From our standpoint, she hadn't shifted the burden back to us to have to prove otherwise. And in terms of reviewing the commission decision, it's compelling that the two commissioners who found in favor of Ms. Jones do not even discuss Dr. Shelbourne's September 15, 2005 report, nor is there any indication that they even considered it when they awarded additional workers' compensation benefits. It is our contention that these opinions, as stated by Dr. Shelbourne, should be considered in determining whether her condition is causally connected and whether she should be entitled to additional permanency benefits. Now, here's the other issue concerning there's no dispute that pre-arbitration, Ms. Jones was diagnosed with a patellar tendon infusion, a tendon injury. There's no dispute that post-arbitration, she was diagnosed generically with either knee pain or, alternatively, devirative joint disease, a bone condition. As stated earlier, there's no opinions generated by Dr. Platner that rebuts Dr. Shelbourne's opinions. And when he reviewed the 2000 MRI report, there's no indication that he was made aware of or that he reviewed the 2003 MRI to determine if there had been any increase or any further changes to her left knee. And there is also no dispute, as discussed earlier, that she did, in fact, have knee injections post-arbitration. However, we would ask that, when he reviewed the Commission decision, they discuss that pre-arbitration, she, in fact, had injections. But the Commission trial, she admitted she had never had prior injections. And also, the medical evidence shows she never did have those injections. There's no dispute to the facts, and we believe that only one reasonable inference can be made based on the facts presented to us. As such, we believe the appropriate review should be de novo. However, in the event this Honorable Court should disagree, we believe that, based on the facts that are in front of us, the decision was against the manifest weight of the evidence and, therefore, should be reversed. As noted by Commissioner Lindsey, in her dissent in the Commission decision, there was a significant gap in medical treatment and a lack of medical evidence to establish causal connection. As our contention, based on the facts that are presented to us, expert witness testimony is required where the matter is clearly outside the common knowledge and experience of an average layperson. This is true when we have a motor vehicle accident, we have a different diagnosis pre- and post-arbitration, we have Dr. Shelbourne's statements that she had a structurally normal knee and there's nothing further she could do to damage her knee, and there's an extended gap in treatment. Based on these facts, and in the absence of medical expert testimony or opinions, we believe Ms. Jones failed to prove her condition was still causally connected to the original accident. For this Court's consideration, the error of the Commission decision is documented by its inconsistencies when they awarded additional permanency benefits. I outlined to you in my brief three prior Commission decisions involving knee contusions. In those three decisions, the range of award for a knee contusion... Are you saying you can't cite to us Commission decisions? That's not presidential, are you aware of that? Correct, but that's for instructive purposes to show what prior Commission decisions have been that these Commissioners do rely on. It's as irrelevant as trying to equate one TORP verdict with another. Okay. Well, in any event, we believe that the additional award of 5% loss of use of a leg was not warranted in this case based on the facts, the medical evidence as documented. The Commission relied solely on Ms. Jones' subjective testimony, and we believe that the subjective complaints that were provided by Ms. Jones was not supported by the medical evidence. She testified that she experienced swelling in her knee. However, when you look at Dr. Platner's records, when he examined her, no swelling would be noted. She also testified concerning her knee in a given way, but there's no medical evidence to support that there's any structural damage that would cause her knee to get bloody. She testifies concerning activities at home, but there's no way that we can validate or substantiate her alleged disabilities that she suffers at home. Based on the above, we would ask that the Commission decision be reversed and find that Ms. Jones failed to prove causation and therefore not entitled to additional benefits. Counsel, please. Good morning, Your Honors. May it please the Court, Counsel Rowan Thimer on behalf of the employee Terry Jones. The employer attempts to argue for de novo review in this case. As outlined clearly in our brief, every issue considered by the Commission is subject to the manifest way to review standard. This is a demanding standard, and I do not believe that reversal is warranted in this case.  The employer incorrectly contends that Ms. Jones was required to present expert medical testimony to satisfy her burden regarding causation. I think the case law is clear that technically that's not required, but how do you respond to his argument, which in essence is, look, the medical history here is totally inconsistent, he alleges, with the claimant's subjective complaints. How do you respond to that specific argument? I don't believe that that argument is valid, Your Honor. I do not believe that the medical evidence is inconsistent with her subjective complaints. She received a course of medical treatment for left knee pain. That was the same issue that she had at the time of the initial arbitration, and there's nothing in the medical records to overcome the Commission's credibility determination when it came to her description of her complaints and how this affected her on a day-to-day basis. What do you make of this gap in treatment he's placing a lot of emphasis on? Well, I think the Commission considered that. I think it's clear from their decision. They note in their decision that the first time she saw a doctor after the initial arbitration was June 2, 2008. Implicit in their award is that they considered this gap and they did not find it significant enough to sever the causal nexus between her original injury and her complaints at the time of the 19-H proceeding. This was within the Commission's province's finder of fact, and as this court held in the University of Illinois case, expert medical testimony is not essential to a finding of causation. I think it's very important in this case that the Commission found Ms. Jones' condition at the time of the 19-H proceeding was readily attributable to her original work injury. The Commission found no intervening cause that broke the chain. They knew about the auto accident. Ms. Jones voluntarily testified about the auto accident. She also testified that it did not in any way affect her left knee, and the Commission believed her. They had every right to do that as the judge of credibility of witnesses in this case. Now, Ms. Jones testified at the 19-H proceeding regarding the change in her left knee since the initial arbitration. Her medical records demonstrated a course of treatment focusing solely on her left knee, the same knee originally injured at work. Given the Commission's finding that there was no intervening accident and the fact that they considered the gap in treatment, I believe that their decision was supported by the evidence and should be affirmed in that regard. Also, if you look at her first post-arbitration medical record, and this is the office visit of June 2, 2008, Deborah O'Brien at Carl Clinic examined Ms. Jones, and she presented complaining of left knee pain and gave a history that it began with a fall from a ladder several years ago. This clearly references the original work injury. So you have the claimant testifying about the beginning of her problems. It's documented in the record, and she's there to plead for increased left knee pain. Was there any increase in the number of injections post-arbitration as opposed to before the original award? Your Honor, I do not believe that Ms. Jones underwent injections prior to the 19-H, prior to the initial arbitration at all. Well, it is indicated in the record that she had a prior benefit from injections. Now, I have not seen in the record any evidence that she underwent injections prior to the initial arbitration. And if you look at the post-arbitration medical records, she underwent a significant series of these injections. So I do think that's important. And then you're saying there was an increase in injections? Yes, yes. Beginning when, those post-arbitration injections? The first injection was done when she first went to see Dr. Plattner. Yeah, what year? That would be 2008. Okay, so we got three years before she goes back and gets injections. We do, Your Honor. There is a gap in treatment. We don't deny that that gap exists, but it is clear that the Commission considered that gap in treatment. And they did not find that it was so significant that it broke the causal chain. And she's back treating for the same problems that she had as a result of this work injury. And that's not in dispute, that she had left knee pain. Okay, so she had left knee pain at the time of the initial arbitration? She did. And that left knee pain worsened between the time of the initial arbitration and the time of the 19-H proceeding. She testified in that regard about where her pain was at the initial hearing and where it was at the 19-H proceeding. And the Commission specifically found her testimony to be credible. I don't see any basis in the record. The initial arbitration hearing, the medical evidence said there's no structural damage, there's no degenerative disease, that there's a bruising, and that it's going to get painful if you overexert. Wasn't that it? Yes, and I think that's important because the employer talks a lot about that last record from Dr. Shelver. They really emphasized that, that he said she can do nothing further to damage her knee. They asked this court to equate that opinion to her left knee can never get worse. And I don't think that's a fair reading of the report, especially when you consider the very next sentence where he explicitly states it could get worse with activity. Wasn't she compensated in the initial arbitration hearing for the degree of get worse with activity? Well, I believe that she was compensated at the initial arbitration for her problems at that time. Now, I do not think that the compensation awarded at the initial arbitration, I think it's clear from Arbitrator White's decision that it did not compensate her for a future worsening of her condition. This is not similar to other cases where, for example, there's medical evidence that a petitioner will have to undergo a future total knee replacement in the future, and then they come back in on a subsequent 19H, and they have had a total knee replacement. And I believe this was the Deere case, and this is cited within another case cited in our brief. However, in that case, the petitioner's complaints of how her condition affected her at the time of the 19H were almost identical at the time of the initial proceeding, and that was very important in this court's decision upholding no award of an increase in PPD benefits, because essentially it was the only difference between the initial arbitration and now is that she's had this prosthetic implant done. And there was no change in how her condition affected her at the time of the 19H proceeding. That's distinguishable from this case. And I do think if you read Arbitrator White's decision, it's clear that she's not awarding compensation to this woman, taking into account the future worsening of her condition. As far as the amount awarded by Arbitrator White, the employer emphasizes that this amount was exceedingly high. It was higher than most other cases for similar conditions. But it didn't appeal that decision. It became final. You don't have to spend a lot of time on that. We've already dealt with the Commission's comparative analysis. Your Honor, I believe that the attempt to distinguish this case from the University of Illinois case made by the employer in their response brief is not correct. The employer contends that the claimant in the University of Illinois case supported her claim with a medical causation opinion. That's not true. In fact, the employer's primary argument for reversal in that case was that she failed to present expert medical testimony in support of her claim. This Court ruled that it was not necessary. It was not necessary in this case either. But I think the opponent's argument is that if expert medical testimony conflicts with her testimony, that's a different course. And I do not believe that expert medical testimony in any way conflicts with her testimony in this case. The law is clear that the claimant's testimony is sufficient to sustain an award, even in the context of a 19-age proceeding. In the A.O. Smith case, this Court held that. This Court said a claimant's testimony can be sufficient to support an increase in permanent disability benefits. And in this case, the claimant testified as to the worsening of her condition. She was found credible. She introduced medical evidence that she received additional treatment that she was not receiving at the time of the initial arbitration. And based on those facts, the Commission, as it was entitled to do as a finder of fact, found that she sustained her burden and that she proved that she suffered a material increase in disability. The cases cited by the employer, Detola, as well as the two Commission decisions, which as pointed out by this Court are not precedential or of any value, the Detola case, it involved an initial award. It's not applicable to this case. I think it's clearly distinguishable in that regard. And once again, I do think it's important that the initial arbitration award in this case was not reviewed. It was not challenged. That was the amount she was awarded based on the condition at the time of her initial arbitration. Her condition changed between that time and the 19-age proceeding. She testified about it. The Commission believed her, as they have every right to do, and they awarded her additional benefits. I believe that award should be upheld. I believe that the finding on causation was not against the manifest way to the evidence. The opposite conclusion is not readily apparent. And I believe that their award of an increase in permanency was also supported by the evidence, as they found her to be credible. And she underwent additional medical treatment that she had not had at the time of her initial trial. Given all those facts, it's our position, and we ask this Court to affirm the decision of the Commission in all regards. A brief note about the medical award. It was reduced by the Circuit Court, and that was pursuant to the stipulation of the parties. The amount awarded by the Commission just simply wasn't correct. I reviewed the record. I believe that the reason that happened, we submitted an itemized billing statement. Some of the charges on the initial pages of it were unrelated, and it appears that the Commission took the total number and issued that in their decision. So we do not challenge the reduction in the medical award, but the medical benefits that were awarded should be upheld. Thank you, Your Honors. Thank you, Counsel. The Court will take the matter under advisory for disposition.